UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RAYNA FILLIOS                                    CIVIL ACTION

v.                                               NO. 19-45

HARAHAN POLICE DEPARTMENT,
TIM WALKER, MICHAEL DOW,                         SECTION "F"
And HARAHAN CITY

<u>ORDER AND REASONS</u>

Before the Court is the defendants' Rule 12(b)(6) motion to dismiss the plaintiff's first amended complaint. For the reasons that follow, the motion is GRANTED.

**Background**

This civil rights lawsuit arises from Rayna Fillios's charge that members of the Harahan Police Department falsely arrested her and released a salacious press report containing factually inaccurate information concerning her arrest.

On the evening of January 6, 2018, Ms. Fillios was at her home in Harahan, Louisiana with her boyfriend, Anthony Kennedy, when she called Mark Marks and requested that he deliver food to her residence. According to Ms. Fillios, Marks was "an acquaintance" who she had met a few weeks earlier in his capacity as an Uber driver. When Marks arrived at her residence, Fillios contends, she answered the door while clad in leggings and a sports bra. She then took the food from Marks, who turned and proceeded to return to his vehicle.

Ms. Fillios further alleges that Kennedy became enraged upon noticing the exchange. Loudly voicing his suspicions concerning her infidelity and accusing Marks of molestation, Kennedy charged after Marks and punched him in the face. And when Marks retreated to the inside of his vehicle, Kennedy began to bang on the window while brandishing a knife and demanding Marks's wallet. Fearing for his life, Marks drove away and called 911.

That same evening, Marks met with Officer Michael Dow and other members of the Harahan Police Department to discuss the incident. According to Ms. Fillios, Marks described "a drunken, violent assault . . . by Kennedy and attributed none of what happened . . . as being the responsibility of Fillios." Nonetheless, Fillios contends, the officers traveled to her residence and arrested her for being a principal to armed robbery and a principal to second-degree battery. She was then transported to the Jefferson Parish Correctional Center, where she was incarcerated for approximately 61 days before she was able to meet her bond.[1]

To support Fillios's arrest, Officer Dow obtained a victim statement from Mark Marks, after which he prepared an incident report and a probable cause affidavit. The Victim Statement of

---

[1] Ms. Fillios's bond was reduced from $100,000 to $30,000 on March 20, 2018.

Mark Marks, dated January 7, 2018 at 12:33 a.m., and ostensibly

signed by Mark Marks,[2] provides:

> Rayana Fillios call and [sic] to get her something to
> eat.  Brought waffle house.  She opens door and come in.
> She was not wearing a shirt.  When ~~you~~ I was leaving she
> grab me gave a hug and kiss.  And bite my tongue.  Turned
> to walked out the guy runs out and punch me in the face.
> The guy told you were to molest her.  I said no just
> brought her food.  Ran to my car lock doors and the guy
> runs to my driver door and started smacking my window.
> He had a knife in his right hand.  White handle with 8
> inch blade.  The guy told me to open my f*****g door and
> give me your f*****g wallet I know loaded got money on
> you.  I drove off and was on the phone with the police.
> I was scared and thought I was going to die.  I belive
> Rayana was part of it.  I belive she had me to come here
> so they could rob me.

After obtaining Marks's statement, Officer Dow prepared a probable

cause affidavit, in which he attested:

> On noted date and time R/O [responding officer], along
> with assisting officers were dispatched to the area in
> reference to an attempted armed robbery.  Upon arrival
> R/O learned from the victim that a girl, Rayna Fillios,
> and her boyfriend, Anthony Kennedy, had attempted to rob
> him.  The victim also stated that Fillios had used his
> Uber services prior to this incident and gave him her
> phone number.  On report date Fillios called him to come
> over, answered the door topless when he arrived, and
> after a brief conversation the victim attempted to leave
> as Fillios appeared to be teasing him.  When he tried to
> leave Fillios grabbed him by the arms pulling him into
> her bare chest, kissed him, and bit his tongue to
> distract him while Kennedy got into position.  The victim
> stated as soon as Fillios released him, Kennedy pulled
> a knife and ordered him to turn over his cash.   The
> victim refused and Kennedy struck him in the chin
> knocking out one of his teeth.  Kennedy fled the scene

---

[2] According to Ms. Fillios, Officer Dow forged Marks's statement.
She further alleges that Dow falsely indicated in the incident
report that he had to transcribe the victim's statement because
Marks suffers from dyslexia.

on foot to his residence nearby while Fillios stayed on location pretending as if she was not involved . . . . Kennedy went to the hospital then [sic] both later transferred to the JPCC for booking. Fillios has a stay-away order against Kennedy.

Ms. Fillios alleges that, despite attesting in his probable cause affidavit that she was "topless" when she answered the door, Officer Dow stated in a police report that Fillios was wearing a "bra and legging tight pants."

The following day, on January 8, 2018, Chief Tim Walker of the Harahan Police Department issued a press release describing Fillios's arrest. Mirroring the account presented in Officer Dow's probable cause affidavit, the press release describes Fillios as "topless" when she greeted Marks at the door and suggests that she attempted to distract Marks while Kennedy "got into position" to rob him. Ms. Fillios alleges that the story of her arrest, as falsely represented by the Harahan Police Department's press release, went viral within hours of its dissemination. Garnering national and international media attention, accounts of the story were published by various news outlets, including USA Today, the New York Post, the Daily Mail, and the Hindustan Times.

Ms. Fillios further alleges that, both before and after her arrest, Marks had told Officer Dow and other unidentified officers that Fillios had nothing to do with the attack perpetrated by Kennedy. And, while the matter was being investigated, Marks advised the Jefferson Parish District Attorney's Office that he

personally drafted and signed his own handwritten statement and that the statement in the police file was *not* the one he had prepared.

On August 19, 2018, Assistant District Attorney Emily Booth filed a Notice of Additional Information in Fillios's state court case to document Marks's conversation with the Jefferson Parish D.A.'s Office. The Notice provides:

1. Following the screening of this case, the victim, M.M., told Assistant District Attorney Ralph Alexis that, after contemplating what happened on the evening of the incident charged in this case, he did not think that Fillios was involved after all, despite what he told the police.

2. M.M. has advised th[e] undersigned that he never told the Harahan Police that he believed Fillios to be involved in this incident. M.M. denies making statements to ADA Alexis that he ever believed Fillios was involved. Regarding the written statement in this case, M.M. recalls writing out part of a statement that was shorter than the statement that is part of the police file in this case, which he signed with his signature and was given to the police. M.M. denies that the signature on the statement in the police file is his signature. As to the content of the statement in the police file (which is the written statement tendered in discovery), M.M. says that the content is all correct except for: (1) Fillios biting his tongue (M.M. says Fillios bit his chin) and (2) the portion of the statement suggesting that Fillios is involved (M.M. says he does not think Fillios was not involved) [sic]. M.M. denies that he has dyslexia or ever telling the officer that he has dyslexia.

3. M.M. advised the undersigned that, following the incident, he learned that Fillios was arrested when he called to follow up about the incident. M.M. advises that he spoke with the scene officer, at which point he asked why Fillios was arrested, telling the officer that he did not think Fillios was involved. M.M. stated that

> he was told that the police were called out on these
> people all the time, so both were arrested and the DA's
> office court sort it all out.

Four days later, the Jefferson Parish D.A.'s Office dismissed all charges against Fillios. That same day, Kennedy pleaded guilty to aggravated assault and second-degree battery.

A few months later, on January 4, 2019, Rayna Fillios filed this 42 U.S.C. § 1983 civil rights lawsuit. The defendants then filed a motion to dismiss, which was granted as unopposed, after which Ms. Fillios was granted leave to amend her complaint.

In her amended complaint, Fillios asserts claims against the City of Harahan, Chief Tim Walker, Officer Michael Dow, and other unnamed officers of the Harahan Police Department. Fillios seeks to recover from the defendants for constitutional violations underlying her § 1983 claims, including violations of her Fourth and Fourteenth Amendment rights; she also asserts Monell liability, as well as various state law claims including false arrest, false imprisonment, slander, defamation, and intentional infliction of emotional distress.[3] In particular, Ms. Fillios charges that:

---

[3] Her complaint alleges the following injuries: (1) permanent damage to reputation; (2) mental anguish and emotional distress; (3) inconvenience; (4) loss of past and future employment; and (5) embarrassment, humiliation, and fear.

As a result of these injuries, she itemizes the following monetary damages: (1) loss of past and future earnings; (2) past and future medical expenses; (3) past legal fees and expenses, including a $30,000 commercial bond, $5,000 in legal fees, and

- Officer Dow and unnamed police officers violated her Fourth and Fourteenth Amendment rights by including false statements in a probable cause affidavit to manufacture probable cause for her arrest;
- Officer Dow, Chief Walker, and unnamed officers defamed her by falsely indicating through an official press release that she was "topless" when she greeted Marks at the door and that she was part of a ruse to facilitate an armed robbery of Marks;
- Officer Dow, Chief Walker, and unnamed officers intended to inflict emotional distress upon her when they falsely arrested her for a felony and then falsely indicated in a press release that she was "topless" and a party to the armed robbery; and
- The City of Harahan is independently liable to Fillios because her injuries and damages resulted from its failure to train, failure to supervise, and/or its negligent hiring and retention of the individual defendants

The defendants now move to dismiss the plaintiff's claims under Rule 12(b)(6), contending that: (1) Fillios fails to state a claim for false arrest and false imprisonment because her arrest and detention were supported by probable cause; (2) qualified immunity shields Chief Walker and Officer Dow from liability in their individual capacities; (3) Fillios's claims against Chief Walker and Officer Dow in their official capacities are duplicative of her claims against the City; (4) Fillios has failed to allege an official custom, policy, or practice to state a § 1983 claim against the City or Chief Walker; (5) the defendants are not liable for punitive damages; and (6) to the extent the Court dismisses

---

$3,000 in home supervision fees; and (4) expenses that may be incurred through her efforts to expunge her criminal record and obtain a legal name change.

She also seeks to recover punitive damages, attorney's fees, costs, and judicial interest.

the plaintiff's federal law claims, it should decline to exercise supplemental jurisdiction over her remaining state law claims.

I.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted.  Such a motion is rarely granted because it is viewed with disfavor.  See Lowrey v. Tex. A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997) (quoting Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982)).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (citing Fed. R. Civ. P. 8). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Stated differently, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

In considering a Rule 12(b)(6) motion, the Court "accept[s] all well-pleaded facts as true and view[s] all facts in the light most favorable to the plaintiff."  See Thompson v. City of Waco,

_Texas_, 764 F.3d 500, 502 (5th Cir. 2014) (citing _Doe ex rel. Magee_ _v. Covington Cnty. Sch. Dist. ex rel. Keys_, 675 F.3d 849, 854 (5th Cir. 2012) (en banc)). But, in deciding whether dismissal is warranted, the Court will not accept conclusory allegations in the complaint as true. _Id._ at 502-03; _see also_ _Iqbal_, 556 U.S. at 678 ("[W]e are not bound to accept as true a legal conclusion couched as a factual allegation.") (internal citations omitted).

To survive dismissal, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" _Gonzalez v. Kay_, 577 F.3d 600, 603 (5th Cir. 2009) (quoting _Iqbal_, 556 U.S. at 678) (internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." _Twombly_, 550 U.S. at 555 (citations and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." _Iqbal_, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." _Id._ at 679. "Where a complaint pleads facts that are

merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. at 678 (internal quotations omitted)(citing Twombly, 550 U.S. at 557). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'", thus, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (alteration in original) (citation omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court may consider documents that are essentially "part of the pleadings" -- that is, any documents attached to or incorporated into the plaintiff's complaint by reference that are central to the plaintiff's claim for relief. Causey v. Sewell Cadillac-Chevrolet, Inc., 394 F.3d 285, 288 (5th Cir. 2004) (citing Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000)). Also, the Court is permitted to consider matters of public record and other matters subject to judicial notice without converting the motion into one for summary judgment. See United States ex rel. Willard v. Humana Health Plan of Texas Inc., 336 F.3d 375, 379 (5th Cir. 2003).

Here, the Victim Statement of Mark Marks, Officer Dow's Arrest Report and Probable Cause Affidavit, and the Notice of Additional Information filed by the Jefferson Parish District Attorney's Office are all referenced in the plaintiff's first amended

complaint and central to her claims for relief. Therefore, the Court may consider the content of these documents in deciding the defendants' motion to dismiss.

## II.

Title 42, United States Code, Section 1983 creates a damages remedy for the violation of federal constitutional or statutory rights under color of state law; it provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

Because § 1983 merely provides a remedy for designated rights, rather than creating any substantive rights, "an underlying constitutional or statutory violation is a predicate to liability." Harrington v. Harris, 118 F.3d 359, 365 (5th Cir. 1997) (citation omitted). To establish § 1983 liability, the plaintiff must satisfy three elements:

(1) deprivation of a right secured by the U.S. Constitution or federal law,
(2) that occurred under color of state law, and
(3) was caused by a state actor.

Victoria W. v. Larpenter, 369 F.3d 475, 482 (5th Cir. 2004) (citation omitted).

Ms. Fillios's § 1983 claims against the City of Harahan, Chief Walker, and Officer Dow in their official and individual capacities

are based upon alleged deprivations of her constitutional rights to be free from false arrest and unlawful detention under the Fourth and Fourteenth Amendments. Specifically, Fillios submits that Officer Dow forged the victim statement of Mark Marks to manufacture probable cause for her arrest and subsequent detention. Accordingly, the viability of Ms. Fillios's § 1983 claims turns upon whether she has plausibly alleged that her arrest and detention were not supported by probable cause.

"For the 'constitutional torts' of false arrest, unreasonable seizure, and false imprisonment, a plaintiff must show that an officer lacked probable cause." Silver v. Garcia, No. SA-19-CV-7-XR, 2019 U.S. Dist. LEXIS 29245, at *9 (W.D. Tex. Feb. 25, 2019 (citing Brown v. Lyford, 243 F.3d 185, 189 (5th Cir. 2001)); see also Davidson v. City of Stafford, 848 F.3d 384, 391 (5th Cir. 2017) ("A warrantless arrest without probable cause violates clearly established law defining an individual's rights under the Fourth Amendment.") (citations omitted). Probable cause exists where the totality of the "facts and circumstances within the officer's knowledge [] are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Id. (quoting Hogan, 722 F.3d at 731). Probable cause has been held to mean a "fair probability" that a crime has been committed. United States v. Garcia, 179 F.3d 265,

269 (5th Cir. 1999).  Although "the requisite 'fair probability' is something more than a bare suspicion, [it] need not reach the fifty percent mark."  Id.

The defendants contend that Officer Dow's decision to arrest Ms. Fillios was clearly based on probable cause because the victim himself, Mark Marks, provided Officer Dow with the information concerning his attack.  Anticipating the plaintiff's argument that Officer Dow forged the Victim Statement of Mark Marks, the defendants point to the Notice of Additional Information, which summarizes Mr. Marks's communications with the Jefferson Parish District Attorney's Office.  The defendants emphasize that the Notice provides, in part:

> Following the screening of this case, the victim, M.M., told Assistant District Attorney Ralph Alexis that, after contemplating what happened on the evening of the incident charged in this case, he did not think that Fillios was involved after all, **despite what he told the police.**

Emphasis added.  In response, the plaintiff urges the Court to consider the remaining portions of the Notice, which suggest that Marks did *not* tell the police he believed Fillios was involved. According to the Notice, Marks also stated that: (1) "he never told the Harahan Police that he believed Fillios to be involved in this incident;" (2) "he does not think Fillios was not involved [sic];" and (3) "following the incident . . . he asked why Fillios was arrested, telling the officer that he did not think Fillios

13

was involved," to which "he was told that the police were called out on these people all the time, so both were arrested and the DA's office could sort it all out."

Ms. Fillios contends that no reasonably competent officer, who actually listened to Marks, could have found probable cause to arrest Fillios for any crime. Although the Court takes Ms. Fillios's charge of forgery very seriously, the Court disagrees that her arrest was not supported by probable cause. Viewed in the light most favorable to Ms. Fillios, the facts are as follows: (1) Fillios called Marks, who she had previously met in his capacity as an Uber driver, and asked him to bring food to her residence; (2) when Marks arrived, Fillios greeted him while wearing leggings and a sports bra; (3) Fillios took the food from Marks, gave him a hug, and bit his chin; (4) Kennedy witnessed the encounter and became enraged; (5) Kennedy then punched Marks in the face and charged after his while brandishing a knife and demanding his wallet; (6) Mr. Marks met with Officer Dow and other unidentified Harahan Police Department officers that night to discuss the incident; (7) Marks provided his own handwritten, signed statement, which was not included in the police file; (8) Officer Dow forged Marks's victim statement; (9) the content of the forged statement is incorrect only to the extent it suggests that Ms. Fillios was involved in the attempted robbery and battery because Marks believes she was not involved; (10) Marks asked an

unidentified officer why Fillios had been arrested when she was not involved; and (11) the officer said that the she and her boyfriend "always call" 911 and that the D.A.'s office would "sort it all out."

Even if Marks did not tell any officer that he believed Fillios was involved in his attack, and Officer Dow did forge Marks's statement, the facts alleged in Ms. Fillios's complaint and contained in documents incorporated into her complaint by reference nonetheless indicate that the arresting officer(s) had a "fair probability" to believe that Fillios lured Marks to her residence so that her boyfriend could rob him. Because Ms. Fillios's arrest and detention were supported by probable cause, her § 1983 claims fail as a matter of law.

Moreover, a district court may decline to exercise supplemental jurisdiction over state law claims if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). Because no federal law claims remain, the Court declines to exercise supplemental jurisdiction over the plaintiff's state law causes of action, including her claims for defamation and intentional infliction of emotional distress.

Accordingly, for the foregoing reasons, IT IS ORDERED: that the defendants' motion to dismiss is GRANTED. IT IS FURTHER ORDERED: that the plaintiff's federal law claims are dismissed

with prejudice and that her state law claims are dismissed without prejudice.

New Orleans, Louisiana, May 7, 2019

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE